UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| PEDRO RODRIGUEZ,<br><br>    Plaintiff,<br>v.<br><br>JAMES DZURENDA,<br><br>    Defendant. | Case No. 3:17-cv-00205-MMD-CBC<br><br>ORDER |

**I.    SUMMARY**

This case involves the religious freedom of an incarcerated person who practices Satanism.

Before the Court is the Report and Recommendation ("R&R" or "Recommendation") of United States Magistrate Judge Carla B. Carry (ECF No. 59) ("R&R") relating to Defendant James Dzurenda's motion for summary judgment ("Summary Judgment Motion") (ECF No. 37).[1] Plaintiff Pedro Rodriguez filed an objection (ECF No. 62), and Defendant responded (ECF No. 63). The R&R recommends granting Defendant's Summary Judgment Motion. (ECF No. 59 at 1.) For the reasons stated below, the Court sustains Plaintiff's objection and declines to adopt the R&R.

Additionally before the Court is Plaintiff's motion for partial reconsideration ("Reconsideration Motion") (ECF No. 49) of the Court's order (ECF No. 42) adopting Judge Carry's recommendation (ECF No. 29) to deny Plaintiff's motion for temporary

///

///

---

[1] The Court has reviewed the response (ECF No. 50) and reply (ECF No. 54) related to Defendant's Summary Judgment Motion.

restraining order and/or preliminary injunction (ECF No. 15).[2] For the reasons stated below, the Court denies Plaintiff's Reconsideration Motion.

## II. BACKGROUND[3]

Plaintiff is an inmate within the Nevada Department of Corrections ("NDOC"). (ECF No. 37 at 2; ECF No. 50 at 3.) At all times relevant to this case, he was housed at Ely State Prison ("ESP"). (ECF No. 37 at 2; ECF No. 50 at 3.)

The NDOC Religious Practice Manual, Administrative Regulation ("AR") 810.3, governs the regulation of the various religions inmates practice. (*See* ECF No. 37-7 (effective February 2, 2014, through September 4, 2017); ECF No. 37-8 (effective September 5, 2017, through present).) It is supplemented by the NDOC Faith Group Overview, AR 810.2, which lists recognized faith groups and the religious property individuals in those faith groups may possess. (*See* ECF No. 37-1 (effective January 2, 2014, through September 4, 2017); ECF No. 37-2 (effective September 5, 2017, through present).)

Individuals who wish for NDOC to recognize additional faith groups or authorize new religious property must submit a Request for Accommodation of Religious Practices Form ("Doc 3505") to the chaplain, who then submits the form to the Religious Review Team ("RRT"). (ECF No. 37-7 at 14.) The RRT will research the request and submit a recommendation to the designated Deputy Director. (*Id.*) The designated Deputy Director will consider the request and recommendation and render a final decision. (*Id.*)

Plaintiff completed an NDOC Religious Property Request Form (not a Doc 3505 form) on December 29, 2010, requesting one "Baphomet amulet goathead/pentagram" and one "silver-plated brass chain." (ECF No. 37-6 at 2.) The chaplain reviewed the request on December 30, 2010, and "recommend[ed] denial" to the warden because the

///

---

[2]The Court has reviewed Defendant's response (ECF No. 55) and Plaintiff's reply (ECF No. 58).

[3]The following facts are undisputed unless otherwise indicated.

2

request was "not authorized per AR 810.2." (*Id.*) The warden denied the request on January 4, 2011. (*Id.*)

Plaintiff completed another NDOC Religious Property Request Form on November 8, 2015, requesting one "pentagram amulet of Baphomet." (ECF No. 50 at 202.) The chaplain reviewed the request on November 9, 2015, and recommended denial because "per AR 810—pentagram amulets are available via the canteen." (*Id.*) The warden denied the request on November 10 or 18, 2015. (*Id.* (date partly illegible).)

Plaintiff contends—and Defendant disputes—that he submitted three Doc 3505 forms requesting official recognition of Satanism between June 2015 and April 2016. (ECF No. 50 at 5; ECF No. 37 at 3.) Plaintiff alleges that he did not receive a response to these forms. (ECF No. 50 at 5.) Defendant alleges that Plaintiff never submitted these forms. (ECF No. 37 at 3.)

Plaintiff filed an informal grievance in June 2016, alleging that the chaplain failed to respond to kites over the past two months inquiring about his request for religious accommodations. (ECF No. 50 at 185.) The grievance was denied. (*Id.* at 188.) The denial noted that the chaplain did not remember receiving a Doc 3505 form but that another inmate submitted a similar request yet to be finalized by the RRT. (*Id.*) Plaintiff filed a first level grievance (*id.* at 183) and received a similar response (*id.* at 184). Plaintiff filed a second level grievance (*id.* at 180) and received a similar response (*id.* at 181). The response to the second level grievance issued on January 26, 2017. (*Id.*)

Plaintiff's Complaint was signed on March 28, 2017 (ECF No. 1-1 at 14), and the Court received the Complaint on April 3, 2017 (*id.* at 1). After screening, the Court permitted Plaintiff to proceed on the two counts asserted in the Complaint against Defendant in his capacity as the director of NDOC: (1) First Amendment right to Free Exercise and Fourteenth Amendment right to equal protection claims alleged in Count I; and (2) Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000 ("RLUIPA") claim in Count II. (ECF No. 6 at 6-7.)

///

**III.    REPORT AND RECOMMENDATION (ECF NO. 59)**

Judge Carry recommends granting Defendant's Summary Judgment Motion on the ground that Plaintiff's claims are barred by the statute of limitations. (ECF No. 59 at 9.) Judge Carry reasoned that Plaintiff's claims accrued when he received the December 30, 2010 denial of his religious property request. (*Id.* at 8.) Plaintiff primarily objects to Judge Carry's finding that his claims accrued in 2010. (*See* ECF No. 62 at 7.) Plaintiff does not object to Judge Carry's finding that a two-year statute of limitations applies to Plaintiff's § 1983 claims or that a four-year statute of limitations applies to Plaintiff's RLUIPA claim. (*See id.*)

**A.    Legal Standards**

**1.    Review of Magistrate Judge's Report and Recommendation**

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." *Id.* In light of Plaintiff's objection, the Court will engage in a *de novo* review to determine whether to adopt Magistrate Judge Carry's R&R.

**2.    Summary Judgment**

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49

(1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

**B.    Discussion**

A statute of limitations under 42 U.S.C. § 1983 begins to run when the cause of action accrues, *i.e.*, "when the plaintiffs know or have reason to know of the injury that is the basis of their action." *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002) (citing *Cabrera v. City of Huntington Park*, 159 F.3d 374, 379 (9th Cir. 1998)). To determine "when an act occurs for statute of limitations purposes, [courts] look at when the 'operative decision' occurred." *Id.* (quoting *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981)). Courts must distinguish "the operative decisions [from] inevitable

1 consequences that are not separately actionable." *Id.* (citing *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980)). For a subsequent act to give rise to a new claim, that act "must be 'discrete' or 'independently wrongful.'" *Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 870 (9th Cir. 2014) (quoting *Pouncil v. Tilton*, 704 F.3d 568, 581 (9th Cir. 2012)). "If the act is merely the 'delayed, but inevitable, consequence' of a prior discriminatory act, it will not cause a new statute of limitations to run." *Id.* (quoting *Pouncil*, 704 F.3d at 581).[4]

In *Pouncil*, for example, an incarcerated individual sued prison officials for violations of RLUIPA and the free exercise clause of the First Amendment when they denied his 2008 request for a conjugal visit with his second wife. 704 F.3d at 570-71. Prison officials previously denied his 2002 request for a conjugal visit with his first wife. *Id.* In both instances, prison officials relied on the same prison regulation. *Id.* The Ninth Circuit found that the second denial was a separate, discrete act, rather than a mere effect of the 2002 denial. *Id.* at 581. The court reasoned that "[t]he 2008 denial is an independently wrongful 'present violation,' because [the plaintiff's] claims do not rely on any acts that occurred before the statute of limitations period to establish a violation of his right to free exercise of religion or his rights under RLUIPA." *Id.* In other words, "the 2008 denial relied on a new application of the regulation to a new request for a conjugal visit, it did not rely on the 2002 denial as barring all subsequent requests for conjugal visits." *Id.*

The "injury that is the basis of [the] action" in this case consists of Plaintiff's inability to practice his faith—he cannot obtain religious property based on NDOC's nonrecognition of Satanism as an official faith group. (*See also* ECF No. 6 at 6-7 (screening order characterizing Plaintiff's claims).) The Court can infer this injury from Plaintiff's allegations that "Defendant Dzurenda imposed a substantial burden upon Plaintiff's sincere religious exercise by failing to include Satanism as a legitimate faith

---

[4]The Court's "finding concerning when a claim accrues is entitled to deferential review." *Pouncil*, 704 F.3d at 574 (quoting *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 691 (9th Cir. 2005)).

group within the NDOC Religious Practice Manual so as to enable Plaintiff to obtain, possess and engage in religious exercise or rituals mandated by his religion." (ECF No. 7 at 9.) Additional support for this formulation of Plaintiff's injury comes from his allegations that he "is being denied an equal opportunity to exercise his religion . . . and herein demands the above ritual items and religious space" and that he "is unable to obtain, possess and thereby use any of the essential ritual property items identified in the aforementioned Bibles and, consequently, is being denied all opportunity to the free exercise and expression of religion." (*Id.* at 7.)

Thus, there are several acts or omissions that theoretically could have caused Plaintiff's claims to accrue: NDOC's 2010 denial of Plaintiff's request for religious property; NDOC's failures to respond to Plaintiff's requests for formal recognition of Satanism beginning around June 2015;[5] and NDOC's November 2015 denial of Plaintiff's request for religious property. If either of the latter two acts constitutes a "separate, discrete act" giving rise to Plaintiff's claims, then Plaintiff's Complaint was filed within the statutes of limitations, the shortest of which is two years.

The Court finds that NDOC's failures to respond to Plaintiff's requests for formal recognition of Satanism beginning around June 2015 constitute separate, discrete acts from the 2010 denial of Plaintiff's religious property request. In the same way that the 2008 denial of the plaintiff's conjugal visit request in *Pouncil* did not rely on the 2002 denial as barring all subsequent request for conjugal visits, NDOC's failures in 2015 and 2016 to respond to Plaintiff's requests for formal recognition of Satanism did not rely on the 2010 religious property denial. Plaintiff sought formal recognition of Satanism in 2015 and 2016—not religious property required to practice Satanism. Given that Plaintiff's Complaint was filed on April 3, 2017, at the latest, the Complaint was filed within the statutes of limitations.

///

---

[5] Viewing the evidence in the light most favorable to Plaintiff as the nonmoving party, the Court accepts Plaintiff's assertion that he actually submitted three requests for NDOC to formally recognize Satanism, though the parties dispute this. The Court discusses the parties' dispute in Section IV(C), *infra*.

7

1     Accordingly, the Court rejects Defendant's argument that he is entitled to
2 summary judgment based on the statutes of limitations.

**C.     Exhaustion**

Defendant argues that he is entitled to summary judgment because Plaintiff never submitted Doc 3505 forms requesting that NDOC formally recognize Satanism, thereby rendering his claims unexhausted. (ECF No. 37 at 8.) Plaintiff maintains that he submitted three Doc 3505 forms that went unanswered. (ECF No. 50 at 5.) Both sides have produced evidence in support of their positions.

Plaintiff's evidence consists of his own declaration, which contains the following allegations. Plaintiff submitted his first Doc 3505 request in June 2015 by completing the form and handing it to a Unit Officer for delivery to the ESP Chaplain, Marc Mallinger. (ECF No. 50 at 29.) Plaintiff did not deliver the form to the chaplain himself because he does not have physical access to the chapel. (*Id.*) Plaintiff waited 90 to 120 days for a response but did not receive one. (*Id.*) Plaintiff submitted a second Doc 3505 request in December 2015 in the same manner but did not receive a response after 90 to 120 days. (*Id.* at 29-30.) Plaintiff submitted a third Doc 3505 form in April 2016 attached to a kite requesting the chaplain acknowledge its receipt. (*Id.* at 30; 187 (copy of kite).) Plaintiff did not receive a response and initiated the grievance process, which concluded on January 26, 2017. (*Id.* at 30, 181 (denial of second level grievance).)

Defendant's evidence consists of declarations from two chaplains as well as prison officials' responses to Plaintiff's grievances. ESP chaplain Marc Mallinger alleges that he "do[es] not recall and ha[s] been unable to locate any record of inmate Rodriguez ever making a request for the Request for Accommodation of Religious Practices form (DOC 3505) form and/or submitting it during the period of January 2016 to present[.]" (ECF No. 37-3 at 3.) Richard Snyder—chaplain at Warm Springs Correctional Center and member of the RRT since April 2015—alleges that "[t]here is no record of [Plaintiff] having submitted a Request for Accommodation of Religious Practices form (DOC 3505) during the period of January 2016 to present[.]" (ECF No. 37-4 at 3.) The grievance

1 responses all indicate that NDOC had no record of Plaintiff submitting Doc 3505 forms. (*See* ECF No. 37-10 at 3 ("The Ely State Prison chaplain does not recall a religious accommodations request coming from you."), 6 ("Chaplain Mallinger . . . did not receive your kite . . . ."), 10 ("Chaplain Mallinger . . . does not remember receiving a Religious Accommodations request from you.").)

This competing evidence gives rise to a genuine issue of material fact, particularly when the evidence is viewed in the light most favorable to Plaintiff. A reasonable jury could find that Plaintiff's claim that he submitted the Doc 3505 form on three separate occasions to be credible and could discredit Defendant's evidence. This is particularly because the declarations Defendant cites only address Doc 3505 forms filed from January 2016 onward even though Plaintiff alleges that he submitted the first Doc 3505 form in June 2015.

Accordingly, the Court rejects Defendant's argument that he is entitled to summary judgment based on exhaustion.

### D. Personal Participation

Defendant argues that he is entitled to summary judgment because Plaintiff failed to allege personal participation or supervisory liability. (ECF No. 37 at 14.) The Court rejects this argument. Defendant Dzurenda is the proper defendant on a claim for prospective injunctive relief from a prison regulation because he would be responsible for ensuring that injunctive relief was carried out, even if he were not personally involved in the decision giving rise to Plaintiff's claims. *Pouncil*, 704 F.3d at 576.

### E. Qualified Immunity

Defendant argues that he is entitled to summary judgment based on qualified immunity. (ECF No. 37 at 12.) Defendant Dzurenda cannot raise qualified immunity because Plaintiff seeks prospective injunctive relief. *Pouncil*, 704 F.3d at 576 (citing *Vance v. Barrett*, 345 F.3d 1083, 1091 n.10 (9th Cir. 1989)).

Accordingly, the Court sustains Plaintiff's objection, declines to adopt Judge Carry's R&R, and denies Defendant's motion for summary judgment.

## IV. PLAINTIFF'S RECONSIDERATION MOTION (ECF NO. 49)

Plaintiff seeks reconsideration of the Court's order adopting Judge Carry's recommendation to deny Plaintiff's motion for temporary restraining order and/or preliminary injunction. (ECF No. 49 at 1.) Plaintiff sought an injunction prohibiting Defendant from enforcing AR 810 and 810.1 to the extent they preclude him from practicing Satanism. (ECF No. 15 at 1-2.) Judge Carry recommended denying the motion because Plaintiff did not show a likelihood of success on the merits or irreparable harm. (ECF No. 29 at 8-12; *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.").) Judge Carry found that Plaintiff did not show a likelihood of success on the merits because he did not show that he submitted Doc 3505 forms requesting official recognition of Satanism. (ECF No. 29 at 10.) Judge Carry found that Plaintiff did not show irreparable harm because Plaintiff did not show that was entirely precluded from practicing Satanism. (*Id.* at 12.) The Court agreed with Judge Carry and denied Plaintiff's motion. (ECF No. 42 at 5-7.)

### A. Legal Standard

A motion to reconsider must set forth "some valid reason why the court should reconsider its prior decision" and set "forth facts or law of a strongly convincing nature to persuade the court to reverse its prior decision." *Frasure v. United States*, 256 F. Supp. 2d 1180, 1183 (D. Nev. 2003). Reconsideration is appropriate if this Court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J v. AC&S, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). But "[a] motion for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the court already has ruled." *Brown v. Kinross Gold, U.S.A.*, 378 F. Supp. 2d 1280, 1288 (D. Nev. 2005). In addition, a district court may decline to consider claims

10

and issues that were not raised until a motion for reconsideration. *See Hopkins v. Andaya*, 958 F.2d 881, 889 n.5 (9th Cir. 1992), *impliedly overruled on other grounds in Federman v. County of Kern*, 61 F. App'x 438, 440 (9th Cir. 2003).

**B.     Discussion**

Plaintiff first argues that the Court clearly erred by mischaracterizing the nature of the relief sought in the motion. (ECF No. 49 at 3.) The Court disagrees. In evaluating whether Plaintiff sought a mandatory or prohibitory injunction, the Court concluded that Plaintiff sought a mandatory injunction because he was "not seeking to maintain the status quo." (ECF No. 42 at 3.) Rather, Plaintiff was "requesting a mandatory injunction to require Defendant to formally recognize Satanism and to allow him to practice his religious faith similar to other faith groups recognized under AR 810.1 without having to comply with AR 810 and 810.1 pending a final decision on the merits of his claims." (*Id.*) Plaintiff takes issue with the last part of this analysis, contending that he already has complied with AR 810 and 810.1 by submitting Doc 3505 forms. (ECF No. 49 at 3.) But even accepting this as true, the relief requested constitutes a mandatory injunction. Regardless of whether Plaintiff submitted Doc 3505 forms, he did not seek to maintain the status quo—he sought a mandatory injunction requiring Defendant to formally recognize Satanism. Accordingly, the Court rejects Plaintiff's first argument.

Plaintiff next argues that the Court clearly erred in finding that Plaintiff failed to show a likelihood of success on the merits. (*Id.*) The Court disagrees. The Court found that Plaintiff did not show a likelihood of success on the merits because he did not clearly establish that he submitted Doc 3505 forms, thereby failing to satisfy the high standard required for mandatory injunctive relief. (*See* ECF No. 42 at 4 (quoting *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994)) ("Courts should deny requests for mandatory preliminary injunctions unless the facts and law clearly favor the moving party.").) While Plaintiff has raised a genuine issue of material fact in this regard, as discussed *supra*, he has not shown that the facts "clearly favor[ed]" him. Moreover, Plaintiff did not establish irreparable harm.

11

Plaintiff's third argument relates to an erroneous citation in his motion. To show irreparable harm, Plaintiff cited to "ECF No. 7; Exh. 1, ¶ 3-4." (ECF No. 15 at 13:26.) The document at ECF No. 7 is Plaintiff's Complaint. Exhibit 1 to that document is a copy of AR 810. (ECF No. 7 at 15-18.) Plaintiff now clarifies that he intended to refer to Exhibit 1 of his motion, which is his own declaration. (ECF No. 49 at 4; ECF No. 15 at 20-21.) The Court will consider the declaration, though it does not change the outcome. In the third paragraph of his declaration, Plaintiff asserts that he learned the following in early 2015 by reviewing AR 810: Satanism is not a recognized faith group; Plaintiff needed to submit a Request for Religious Accommodation Form to the RRT to add his religion to AR 810; and Plaintiff was unable to obtain ritual items unless Satanism was formally recognized. (ECF No. 15 at 20.) In the fourth paragraph, Plaintiff alleges that he submitted a Doc 3505 form in June 2015 and another in approximately October 2015 but never heard back. (*Id.*) Plaintiff further alleges that he turned to Mr. Greene, an Inmate Legal Assistant. (*Id.* at 20-21.) These paragraphs do not demonstrate irreparable harm. They show that Plaintiff educated himself about NDOC's process for requesting formal recognition of Satanism and that Plaintiff allegedly submitted Doc 3505 requests. They do not detail how Plaintiff was harmed, what items he was denied, or how he would suffer irreparable harm in the absence of an injunction. These paragraphs also do not rebut Defendant's assertion that Plaintiff remains "free to practice his religion in his cell like any other practitioner via prayer." (ECF No. 42 at 6 (citing ECF No. 17 at 5).) Nor do Plaintiff's allegations demonstrate an "outright ban" on Satanism. (*See* ECF No. 49 at 4.)

Accordingly, the Court denies Plaintiff's Reconsideration Motion.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motion and recommendation before the Court.

///

The Court declines to adopt the Report and Recommendation of United States Magistrate Judge Carla B. Carry (ECF No. 59).

It is therefore ordered that Defendant's motion for summary judgment (ECF No. 37) is denied.

It is further ordered that Plaintiff's motion for reconsideration (ECF No. 49) is denied.

It is further ordered that the following motions are denied as moot: Plaintiff's motions to partially strike declarations (ECF Nos. 40, 51) and Plaintiff's motion to stay summary judgment proceedings (ECF No. 41).

DATED THIS 29th day of May 2019.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE