1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

PEDRO RODRIGUEZ,

                            Plaintiff,

    v.

JAMES DZURENDA,

                            Defendant.

Case No. 3:17-cv-00205-MMD-CLB

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE[1]**

10
11
12
13
14
15
16
17
18

    This case involves a civil rights action filed by Plaintiff Pedro Rodriguez, ("Rodriguez"), against Defendant James Dzurenda ("Dzurenda").  Currently pending before the court is Rodriguez's partial motion for summary judgment (ECF No. 94). Dzurenda responded (ECF No. 99), and Rodriguez replied (ECF No. 101).  Dzurenda subsequently filed a motion for summary judgment (ECF No. 103).  Rodriguez responded (ECF No. 113) and Dzurenda replied (ECF No. 114). Having thoroughly reviewed the record and papers, the court recommends Rodriguez's (ECF No. 94) partial motion for summary judgment be denied and Dzurenda's motion for summary judgment (ECF No. 103) be granted in part and denied in part.

19

**I.    BACKGROUND AND PROCEDURAL HISTORY**

20
21
22
23
24
25

    Rodriguez is an inmate currently in the custody of the Nevada Department of Corrections ("NDOC"), housed at the Ely State Prison ("ESP"), where the events in question allegedly occurred.  (*See* ECF No. 7 at 1).  On March 28, 2017, proceeding *pro se*, Rodriguez submitted his civil rights complaint pursuant to 42 U.S.C. § 1983, which he signed and verified, under penalty of perjury, acknowledging the facts and information contained in the complaint were "true and correct."  (*Id.* at 14).

26
27
28

---

[1]    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

1    Pursuant to 28 U.S.C. § 1915A(a), the court screened Rodriguez's complaint on

2    April 11, 2018, and issued a screening order. (ECF No. 6).  The court allowed Rodriguez

3    to proceed on Count I, First Amendment Free Exercise Clause and Fourteenth

4    Amendment Equal Protection Clause claims, and Count II, adopting by reference his

5    Count I claims under the Religious Land Use and Institutionalized Persons Act

6    ("RLUIPA") against Dzurenda.  (ECF No. 6 at 5, 8).

7    On June 17, 2019, Rodriguez filed his first amended complaint ("FAC"), adding

8    Count III, alleging violations of the First Amendment's Establishment Clause, the

9    Fourteenth Amendment's Equal Protection Clause, and adopting by reference his

10    RLUIPA claims against Dzurenda.  (*See* ECF No. 66).

11    **A.    Counts I and II**

12    In Count I of his original complaint, Rodriguez alleges Defendant, NDOC Director

13    Dzurenda, was responsible for promulgating NDOC Administrative Regulation ("AR")

14    810.1 (the NDOC Religious Practice Manual ("Practice Manual"), ECF No. 66 at 21-53),

15    which provides inmates "opportunities to practice the requirements of recognized faith

16    groups."  (ECF No. 7 at 4).  Rodriguez further alleges NDOC recognizes a variety of

17    nontraditional religions as legitimate faith groups, allowing practitioners of such faiths to

18    purchase and own ritual property items as protected components of those faiths.  (*Id.* at

19    4-5).  Rodriguez further alleges the Practice Manual fails to recognize Satanism as a "faith

20    group" thus deliberately excluding and preventing its practitioners from religious exercise,

21    unlike similarly situated inmates of other nonmainstream faiths.  (*Id.* at 5).

22    In 2007, Rodriguez allegedly declared his religion as Satanism on a "Faith Group

23    Affiliation Declaration Form," then subsequently submitted three separate "Request for

24    Accommodation of Religious Practice" ("DOC 3505") forms to the ESP Chaplain

25    requesting Satanism and various property items be added to the Practice Manual.  (*Id.*)

26    Rodriguez alleges that after neither the Chaplain nor the Religious Review Team ("RRT")

27    responded, he initiated a grievance seeking to "add Satanism as a new, recognized

28    religion" in the Practice Manual.  (*Id.* at 5-6).  Rodriguez alleges he needs "an alt[a]r,

alt[a]r cloth, amulets, bells, chalice, elixir, herbs and incense, gong, medallion (of a pentacle disc and/or pentagram of Satan), parchment paper, phallus, picture of Baphomet, robe (black, cowled or hooded) and a talisman." (*Id.* at 6-7).

Rodriguez alleges he sincerely believes in Satanism and that Dzurenda substantially burdened his free exercise of religion by not recognizing Satanism in the Practice Manual. (*Id.* at 7). Rodriguez further alleges Dzurenda denied him an equal opportunity to practice his religion by not making ritual property items available to practitioners of Satanism like similarly situated inmates of other faiths. (*Id.*) Rodriguez alleges Dzurenda thus promoted a policy and practice of discriminating against him because of his religious beliefs in violation of the First and Fourteenth Amendments. (*Id.* at 7-8). Rodriguez alleges several states and the Federal Bureau of Prisons ("BOP") recognize Satanism as a religion. (*Id.* at 8).

In Count II of his original complaint, incorporating his Count I claims by reference, Rodriguez alleges that under RLUIPA, Dzurenda "imposed a substantial burden" on his sincere religious beliefs, "never claimed that a compelling state interest exists to warrant the substantial burden," and "failed to consider . . . means other than outright exclusion to further any compelling governmental interests" that may exist. (*Id.* at 8).

### B.    Count III

Rodriguez's FAC added Count III, which asserted three new "claims." (ECF No. 66; *see also* ECF No. 65). These three new claims included: (1) a First Amendment Free Establishment Clause violation claim; (2) a Fourteenth Amendment Equal Protection clause violation claim; and (3) a RLUIPA violation claim. (*See* ECF No. 66). First, Rodriguez alleges NDOC's regulations impermissibly entangle themselves with the religious practices of prisoners. (*Id.* at 9-11). Rodriguez further alleges policies which allow similarly situated practitioners of mainstream religions to purchase approved religious items while refusing to approve Satanists' religious items are unconstitutional. (*Id.* at 11-12). Rodriguez asserts those policies do not serve a compelling state interest

1    and are not the least restrictive means of furthering any interest the state may have.  (*Id.*

2    at 12).

3        Rodriguez requests the following relief: (1) declaratory relief finding: "(a) Satanism

4    is a legitimate faith group that must be included within AR 810; and (b) the failure of

5    Defendant to include Satanism as a faith group is invalid"; (2) temporary and permanent

6    injunctive relief; (3) all costs and fees; (4) a procedural order allowing inmate Travers A.

7    Greene (#48494) ("Greene") to assist Rodriguez with this litigation; and (5) any further

8    relief to which Rodriguez may be entitled.  (*Id.* at 15).

9        **C.    Competing Motions for Summary Judgment**

10       On April 1, 2020, Rodriguez filed a motion for partial summary judgment requesting

11   judgment in his favor on Count III, alleged violations of the Establishment Clause,

12   RLUIPA, and the Fourteenth Amendment.  (*See* ECF No. 94).  Dzurenda responded

13   (ECF No. 99), and Rodriguez replied (ECF No. 101).  On May 15, 2020, Dzurenda filed

14   a motion for summary judgment on all Counts.  (*See* ECF No. 103).  Rodriguez responded

15   (ECF No. 113) and Dzurenda replied (ECF No. 114).  The court will address each motion

16   in turn.

17   **II.    LEGAL STANDARD**

18       Summary judgment should be granted when the record demonstrates that "there

19   is no genuine issue as to any material fact and the movant is entitled to judgment as a

20   matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  "[T]he substantive

21   law will identify which facts are material."  *Id.*  A dispute is "genuine" only where a

22   reasonable jury could find for the nonmoving party.  *Id.*  Conclusory statements,

23   speculative opinions, pleading allegations, or other assertions uncorroborated by facts

24   are insufficient to establish a genuine dispute.  *Soremekun v. Thrifty Payless, Inc.*, 509

25   F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th

26   Cir. 1996).

27       Summary judgment proceeds in burden-shifting steps.  A moving party who does

28   not bear the burden of proof at trial "must either produce evidence negating an essential

element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324.

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004). *See McElyea v. Babbitt,* 833 F.2d 196, 197-98 (per curiam) (9th Cir. 1986) ("A verified complaint may be treated as an affidavit to the extent that the complaint is based on personal knowledge and sets forth facts admissible in evidence . . . ." thus satisfying the *Celotex* affidavit requirement) (quoting *Lew v. Kona Hospital*, 754 F.2d 1420, 1423 (9th Cir. 1985)).

III.    **DISCUSSION**

A.    **Rodriguez's Motion for Summary Judgment on Count III**

Rodriguez's arguments can be summarized as follows: Dzurenda is responsible for promulgating AR 810, a policy disfavoring Satanism and its practitioners in violation of the Free Exercise and Establishment Clauses of the First Amendment.  (ECF No. 94 at 6-13).  Specifically, Rodriguez argues: (1) NDOC's policies advance traditional religions while inhibiting non-traditional religions (*Id.* at 8-11); (2) NDOC "undisputedly maintains a list of religions that facially excludes Satanism, sending a message of disapproval" (*Id.* at 8) and thus "[f]acially, AR 810.3 ventures to establish officially recognized religions" (*Id.* at 9); (3) NDOC "uses [the] RRT committee to assess whether a proposed religion is fundamentally a religion" (*Id.* at 9-10); and (4) "[b]ecause AR 810.3 lacks rudimentary processing protocols or time periods, it facially violates" the Establishment Clause (*Id.* at 12).

In opposition, Defendants argue: (1) a material dispute of fact exists as to Rodriguez's DOC 3505 submissions; and (2) AR 810 does not create a constitutional right to have Satanism listed by NDOC as a recognized faith group.  (ECF No. 99 at 6-7).  In reply, Rodriguez argues: (1) no factual dispute exists because his submissions of DOC 3505 are irrelevant; (2) he is entitled to summary judgment because Defendants thus failed to oppose his motion; and (3) AR 810 fails the Establishment Clause tests set forth by the United States Supreme Court for examining the constitutionality of legislative acts.  (ECF No. 101 at 4-9).

The Establishment Clause of First Amendment "means at least" that "[n]either a state nor the Federal Government ... can pass laws which aid one religion, aid all religions, or prefer one religion over another."  *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1125 (9th Cir. 2013).  "While federal courts refuse, even where claims are made under the First Amendment, to substitute [their] judgment on . . . difficult and sensitive matters of institutional administration . . . a prison administration accommodating inmates' rights under the First Amendment must do so without unduly preferring one religion over

another." *Id.* at 1126 (internal citations and quotations omitted).  The U. S. Supreme Court has found Establishment Clause violations where a law conferred a privileged status to a particular religious sect and where a law singled out a particular faith for advantageous treatment.  *See Cutter v. Wilkinson*, 544 U.S. 709, 722-23 (2005).   A finding of an Establishment Clause violation "can only be made in light of all the circumstances surrounding the defendants' decisions."  *Hartmann*, 707 F.3d at 1126.

Rodriguez urges the court to analyze AR 810 using tests articulated in *Lemon v. Kurtzman* and a series of Establishment Clause decisions related to legislative actions. *See* 403 U.S. 602 (1971); (*see also* ECF Nos. 94 and 101).  However, the proper test for determining whether "a prison regulation impinges on inmates' constitutional rights" under the First Amendment is articulated by the U.S. Supreme Court in *Turner v. Safley*, 482 U.S. 78, 89 (1987).  "[W]hen a prison regulation imposes on an inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.*; *see Cutter*, 544 U.S. at 722 ("accommodation of religious observances" should not be placed "over an institution's need to maintain order and safety. . . . [A]n accommodation must be measured so that it does not override other significant interests.").  Rodriguez's claims are thus examined under the framework articulated by the U.S. Supreme Court in *Turner* below.  *See O'Lone V. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *see also Hartmann*, 707 F.3d at 1126.  Because Rodriguez has not addressed any of the required elements under the *Turner* test, he has failed to meet his initial burden for the motion for summary judgment as it relates to his Count III Establishment Clause claim.  *See* 482 U.S. at 89.  Consequently, Rodriguez has failed to shift his evidentiary burden on summary judgment to Dzurenda.  *See Celotex*, 477 U.S. at 323.

To the extent that Count III contains an Equal Protection Claim, Rodriguez voluntarily abandoned this aspect of his claim. (*See* ECF No. 113 at 9).  Moreover, to the extent that Count III asserts a RLUIPA claim, as explained in Section III(B)(3), Rodriguez is unable to show that AR 810 constitutes a "substantial burden" on his religious exercise, a requirement under RLUIPA.  *See Walker v. Beard*, 789 F.3d 1125, 1134 (9th Cir. 2015).

Accordingly, Rodriguez's motion for partial summary judgment related to Count III claims (ECF No. 94) fails in all aspects of this claim and should be denied.

### B.   Dzurenda's Motion for Summary Judgment

Dzurenda filed a separate motion for summary judgment seeking dismissal of all claims alleged in this lawsuit. (ECF No. 103 at 6-15).  Specifically, Dzurenda argues summary judgment should be granted in his favor on all claims because: (1) NDOC AR 810 does not create a constitutional right to have Satanism recognized as a faith group (*Id.* at 6); (2) Rodriguez has not been prevented from practicing Satanism (*Id.* at 7-10); (3) Rodriguez and other Satanists at NDOC are treated the same as other religious practitioners (*Id.* at 10-11); (4) Rodriguez failed to exhaust his administrative remedy[2] (*Id.* at 12-14); and (5) The challenged regulations pass constitutional muster (*Id.* at 15-17).

In opposition, Rodriguez argues: (1) his claims arise under the federal constitution; (2) Count III does not state a free exercise claim; (3) he abandons his Count III equal protection claim; and (4) Dzurenda has not shown Rodriguez failed to exhaust his administrative remedy.  (ECF No. 113 at 7-16).  In reply, Dzurenda argues: (1) failing to list Satanism as a faith group is not unconstitutional; (2) his motion is supported by affidavits; and (3) Rodriguez has not been prevented from practicing Satanism.  (ECF No. 114 at 4-6).

The court will consider Dzurenda's motion for summary judgment (ECF No. 103) on Rodriguez's Counts I, II, and III in turn.

### 1.   Count I - Rodriguez's First Amendment Free Exercise Claims

First, the court analyzes Rodriguez's Free Exercise claims in Count I.  These claims are broken into two parts: (1) Rodriquez's challenges to AR 810; and (2) his allegations that Dzurenda unduly burdened his practice of Satanism.  (*See* ECF No. 66).

---

[2]     Having reviewed the record, the Court rejects Dzurenda's exhaustion argument. Dzurenda acknowledges the Court has previously rejected the same argument (ECF Nos. 99 at 6 and 103 at 12) in its May 29, 2019 order (*see* ECF No. 64) denying Dzurenda's first motion for summary judgment (ECF No. 37).  Accordingly, the Court rejects Dzurenda's arguments for the reasons outlined in the previous order.  (*See* ECF No. 64).

"The right to exercise religious practices and beliefs does not terminate at the prison door.  The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security."  *McElyea*, 833 F.2d at 197 (citations omitted); *see also O'Lone,* 482 U.S. at 348.  In order to implicate the Free Exercise Clause, the inmate's belief must be both sincerely held and rooted in religious belief.  *See Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).  "A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of [his] religion."  *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015).  As stated above, a prison regulation that impinges on an inmates' First Amendment rights "is valid if it is reasonably related to legitimate penological interests."  *Turner*, 482 U.S. at 89.

### a.    Rodriguez's Challenges to AR 810

Rodriguez's first Free Exercise challenge is to the burden NDOC allegedly places on Satanists through AR 810.  (*See* ECF No. 66).  The factors *Turner* cited as relevant to the inquiry of whether the restrictions are reasonably related to legitimate penological interests are: (1) a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives" and the "existence of obvious, easy alternatives."  *Turner*, 482 U.S. at 89-91.

First, it is undisputed that Rodriguez's belief in Satanism is sincerely held.  *See Shakur*, 514 F.3d at 884-85.  Moreover, contrary to Dzurenda's argument that "there is no scholarly consensus over what precisely constitutes a religion" (ECF No. 103 at 11), the court may assume, without deciding, that Rodriguez's belief in Satanism is a religious belief.  *See Satanic Temple, Inc. v. Cty. Of Scottsdale*, 423 F.Supp.3d 766, (D. Ariz. 2019) (the court need not "adopt a precise definition of religion" to rule on a motion where "Plaintiffs have provided such evidence . . . and will reserve for trial  . . . whether Plaintiffs'

views qualify as religious"); *see also Cutter*, 544 U.S. at 712 (Satanism may be considered a "nonmainstream" religion).

Viewing the circumstances in the light most favorable to Rodriguez, his belief in Satanism is a sincerely held religious belief. *See Shakur*, 514 F.3d at 884-85. Thus, the court will apply the *Turner* factors to determine whether the restrictions placed on Rodriguez's religious exercise by AR 810 are "reasonably related to legitimate penological interests." 482 U.S. at 89.

### i.   Valid, Rational Connection

Restrictions on inmate liberty must have a "valid, rational connection [to] the legitimate government interest put forward to justify it." *Turner*, 482 U.S. at 89-91; *see O'Lone*, 482 U.S. at 348 (valid penological objectives include the deterrence of crime and institutional security). Courts have found Satanism presents particular safety challenges in the institutional setting based on its tenets, presenting legitimate security concerns. *See Doty v. Lewis*, 995 F. Supp. 1081, 1086-88 (D. Ariz. 1998) (finding that some Satanism-related materials, including the *Satanic Bible*, encourage and explain violent acts, are inflammatory and racially hostile, and condone human sacrifice); *cf. Goninan v. Holmes*, No. 6:12-CV-01555-PK, 2014 WL 6966990, at *5 (D. Or. Dec. 4, 2014) (collecting cases).[3]

Rodriguez alleges AR substantially burden his free exercise of Satanism. (ECF No. 66 at 5-8). Specifically, Rodriguez alleges: (1) he sincerely believes in Satanism and the BOP recognizes Satanism as a religion (*Id.* at 7-8); (2) NDOC does not recognize Satanism as a religion, substantially burdening his free exercise of religion (*Id.*); and (3) no evidence exists the RRT ever turned to the BOP for mainstream religions, indicating that NDOC is advancing traditional religions while inhibiting non-traditional religions (*Id.* at 10-11). Although Rodriguez alleges AR 810 contains no standards by which to either

---

[3]   *But see Jackson v. Patzkowski*, 2019 WL 9607660, at *6 (E.D. Wash. Nov. 8, 2019) (some courts have been hesitant, noting First Amendment concerns, to allow prisons to ban the *Satanic Bible* for security reasons despite its unsavory edicts) (citing *Indreland v. Yellowstone Cty. Bd. of Comm'rs*, F. Supp. 2d 1230, 1241 (D. Mont. 2010)). No such concerns are present here, as Rodriguez's request to obtain the *Satanic Bible* was approved. (*See* ECF No. 103-3 at 2).

1    recommend religions, or to accept recommendations to recognize religions, Rodriguez's

2    own description of the procedures outlined in AR 810 indicate those procedures afford for

3    the recognition of non-traditional and nonmainstream religions, including Satanism. (*See*

4    ECF No 94).

5         Rodriguez's evidence shows some prisons have, in accordance with BOP Program

6    Statement 5266.10, allowed inmates subscribing to Satanism accommodations as

7    individual practitioners. (*Id.* at 48-67).  However, those decisions were made by Religious

8    Issues Committees, which are essentially identical to NDOC's RRT.  (*See id.* at 76).

9    Further, Dzurenda's evidence shows, despite allegedly having never received Rodriguez's

10   DOC 3505 requests, the RRT was evaluating other requests to have Satanism officially

11   recognized as a religion based on requests from other inmates.  (*See* ECF Nos. 103-1

12   and 111).  The RRT found the BOP recognizes Satanism as a religion and determined to

13   follow up with the issue by obtaining the needed information from the BOP and the

14   Religious Director's Network.  *See id.*  Thus, because NDOC was already engaged in the

15   very behavior he demanded, pursuant to AR 810, Rodriguez's challenge to AR 810 is

16   premature at best.

17        Moreover, Rodriguez has provided no evidence AR 810 discriminates in effect

18   against Satanism, inhibits non-traditional or nonmainstream religions, or lacks a valid

19   penological purpose.  Indeed, even without Rodriguez's DOC 3505 submissions, the RRT

20   team is already considering other inmates' requests to recognize Satanism as a religion,

21   through processes largely similar to those Rodriguez himself points to as ideal. (*See* ECF

22   Nos. 103-1, 111, and 94-1).  Accordingly, the undisputed evidence shows AR 810 allows

23   non-traditional and nonmainstream religions, including Satanism, to be recognized at

24   NDOC alongside traditional religions by going through the RRT process, while still allowing

25   NDOC to maintain its interest in secure facilities.  AR 810 thus appears to have a "valid,

26   rational connection [to] the legitimate government interest put forward to justify it." *Turner*,

27   482 U.S. at 89.  This factor favors Dzurenda.

28

### ii.    Alternative Means

"Under the second *Turner* factor, we consider whether [Rodriguez] has alternative means by which he can practice his religion or is denied all means of religious expression." *Shakur*, 514 F.3d at 886 (internal citations and quotations omitted).  Even a complete prohibition on certain religious practices does not violate the First Amendment where inmates have other avenues available for practicing their faith.  *O'Lone*, 482 U.S. at 351-52.  Further, courts "have rejected the notion that 'prison officials . . . have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint.'"  *Id.*  at 350 (quoting *Turner*, 482 U.S. at 90-91).

Here, Dzurenda argues Rodriguez may practice Satanism at any time in his cell and has not been prevented from practicing Satanism.  (ECF No. 103 at 7-11).  Indeed, despite Rodriguez's allegations that his practice of Satanism is substantially burdened because it is not recognized by NDOC, he has offered no evidence to show he is unable to practice Satanism.  Conversely, Dzurenda's evidence shows Satanism has "no rites, ceremonies or worship" and "Satanism can be practiced anywhere, anytime, with or without ritual tools."  (*See* ECF Nos. 103 at 8 and 94-2 at 23-25).  Accordingly, despite NDOC's failure to recognize Satanism as a faith group, alternative means are available to Rodriguez to practice his faith.  *See O'Lone*, 482 U.S. at 351-52.  Indeed, Rodriguez's own evidence shows other prisons have recognized Satanists as *individual practitioners*, not as faith groups.  (*See* ECF No. 94 at 48-67).  Further, Dzurenda's evidence shows Rodriguez was approved to obtain books and religious implements in accordance with his Satanic faith.  (*See* ECF Nos. 103-2, 103-3, 103-4, and 103-6).  Rodriguez has provided no evidence that NDOC's failure to recognize Satanism as a faith group prevented him from practicing his faith entirely.  Thus, this factor favors Dzurenda.

### iii.    Impact of Accommodation

When evaluating the reasonableness of a prison regulations restrictions on inmates' rights, a "relevant consideration" is the effect the proposed inmate accommodation "would have on other guards, other inmates, the allocation of prison

resources, and the safety of visitors." *Overton v. Bazzetta*, 539 U.S. 126, 135 (2003). Accommodating Rodriguez's demands would require NDOC to entirely re-envision its operating procedures and administrative regulations regarding the religious accommodation of inmates. Those changes would further require all guards and religious inmates of all faiths to learn the particulars and requirements of the new changes. Such changes are likely to cause significant confusion and increase the risk of rights violations and litigation. Moreover, the changes demanded by Rodriguez would require reallocating scarce prison resources to develop new materials and procedures, and to re-educate guards and inmates alike. Where "such consequences are present, we are 'particularly deferential' to prison administrator's regulatory judgments." *Id.* (quoting *Turner*, 482 U.S. at 90). Accordingly, this factor favors Dzurenda.

#### iv.    Ready/Obvious, Easy Alternatives

The burden is on Rodriguez to show alternative means exist. *Overton*, 539 U.S. at 136. Rodriguez's evidence shows that some prisons have, in accordance with BOP Program Statement 5266.10, allowed inmates subscribing to Satanism accommodations as individual practitioners. (*See* ECF No. 94-1 at 48-67). Where such accommodations impose not more "than a *de minimis*" cost to the valid penological goal, those accommodations are appropriate. *Overton*, 539 U.S. at 136 (citing *Turner*, 482 U.S. at 90-91).

Here, allowing inmates to practice Satanism as individual practitioners avoids some of the security issues presented by allowing Satanists to affiliate as a faith group. Indeed, as Dzurenda has himself alleged, "Rodriguez, nor any other inmate, has been or is currently prevented from practicing Satanism." (ECF No. 103 at 8). Thus, obvious and easy alternatives exist at a *de minimis* cost to NDOC. *See Overton*, 539 U.S. at 136. NDOC can, like some other prisons have, recognize individual practitioners of Satanism. Thus, this factor favors Rodriguez.

On balance, the *Turner* factors favor Dzurenda. *See Turner*, 482 U.S. at 90-91. The court thus finds AR 810's restrictions are "reasonably related to legitimate penological

13

interests." *Id.* at 89.  Accordingly, Rodriguez's challenges to the validity of AR 810 under the First Amendment fail.  Dzurenda is thus entitled to summary judgment on Rodriguez's Count I, First Amendment Free Exercise claims to the extent Rodriguez's allegations relate to AR 810.

### b.    Count I - Rodriguez's Incorporated Free Exercise Claims

Next, the court will consider Rodriguez's allegations his practice of Satanism was substantially burdened by Dzurenda.  (*See* ECF No. 66 at 5-8).  The First Amendment, applicable to NDOC action through the Fourteenth Amendment, ensures inmates, including Rodriguez, retain the right to freely exercise their religion.  *Hartmann*, 707 F.3d at 1122.  "To prevail on [his] Free Exercise claims, [Rodriguez] must allege facts plausibly showing that the government denied [him] 'a reasonable opportunity of pursuing [his] faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" *Id.* (quoting *Cruz v. Beto,* 405 U.S. 319, 322 (1972) (per curiam)).

Rodriguez alleges his free religious exercise was substantially burdened because: (1) he submitted multiple faith group affiliation declaration forms and DOC 3505 forms requesting accommodations but was ignored (ECF No. 66 at 5-7); and (2) "inmates may [neither] purchase or possess religious items absent NDOC's official recognition . . . . [n]or may inmates receive donations or have holidays observed" (*Id.* at 7).  Dzurenda concedes a dispute of material fact exists regarding Rodriguez's alleged multiple, unrequited submissions of DOC 3505.  (*See* ECF Nos. 99 at 6 and 103 at 11).  However, Dzurenda argues that dispute is immaterial because Rodriguez has never been prevented from practicing Satanism.  (ECF No. 103 at 7-11).

Specifically, Dzurenda argues "no rites, ceremonies or worship" exist in Satanism and "Satanism can be practiced anywhere, anytime, with or without ritual tools." (*Id.* at 8). Dzurenda further argues Satanism has no holidays, and that Rodriguez's literature "suggests solitary confinement on Death-Row is ideal for his Satanic rituals and conducive to the practice of Satanism." (*Id.*)  Moreover, Dzurenda argues Rodriguez "obtained essential ritual property" because he requested and was approved for: *The Satanic Bible*;

1    *The Satanic Rituals*; *A Field Guide to Demons*; *The Devil's Notebook*; and a religious chain

2    from his mother.  (*Id.* at 9; *see* ECF Nos. 103-2, 103-3, 103-4, and 103-6).

3          Rodriguez argues he may not "obtain, use, and possess" property related to the

4    free exercise of Satanism because no property is "authorized" while Satanism remains

5    unrecognized, and thus his property "is subject to confiscation as 'unauthorized'" at any

6    time. (ECF No. 113 at 3).  However, Rodriguez's claim that his "unauthorized" property

7    may be confiscated at any time is not supported by the evidence.  *See Soremekun*, 509

8    F.3d at 984 (conclusory statements, speculative opinions, pleading allegations, or other

9    assertions uncorroborated by facts are insufficient to establish a genuine dispute).

10   Instead, Dzurenda's evidence shows that multiple property items were approved and thus

11   authorized for Rodriguez's possession.  (*See* ECF Nos. 103-2, 103-3, 103-4, and 103-6).

12   Rodriguez is therefore unable to show he was prevented from obtaining and using

13   religious property items.

14         Dzurenda contends, and Rodriguez's evidence shows, Satanism has "no rites,

15   ceremonies or worship" and "Satanism can be practiced anywhere, anytime, with or

16   without ritual tools." (*See* ECF Nos. 103 at 8 and 94-2 at 23-25).  However, Dzurenda has

17   offered no evidence in support of his contention that Satanism has no holidays, and the

18   portion of the evidence that would show "Primary Books / Holidays / Festivals" is missing.

19   (*See* ECF No. 94-2 at 24).  In his FAC, Rodriguez alleges Satanism has three major

20   holidays, including one's own birthday, Halloween, and "Walpurgisnacht." (ECF No. 66 at

21   7).  Rodriguez's evidence shows Walpurgisnacht was specifically chosen as the date to

22   establish the "Church of Satan" by its founder and holds special significance.  (*See* ECF

23   No. 94-2 at 23).

24         Viewing the evidence in the light most favorable to Rodriguez, a reasonable juror

25   could find his free exercise of religion is burdened by NDOC's failure to acknowledge the

26   existence of his religious holidays because that failure is not "comparable to the

27   opportunity afforded fellow prisoners who adhere to conventional religious precepts.'"

28   *Hartmann*, 707 F.3d at 1122.

Further, Rodriguez argues, and Dzurenda concedes, a dispute of fact exists whether NDOC received Rodriguez's DOC 3505 forms yet simply misplaced or ignored them. (*See* ECF Nos. 98 at 6 and 103 at 11). A reasonable juror could conclude that Rodriguez's requests were ignored because NDOC did not want to recognize, or wanted to delay recognizing, Satanism and its practitioners as legitimately religious. Similarly, such treatment would not be "comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" *Hartmann*, 707 F.3d at 1122. Moreover, as noted above, easy, obvious alternatives exist to accommodate Rodriguez's religious exercise without infringing on NDOC's valid penological goals. Thus, because material disputes of fact remain whether Dzurenda substantially burdened Rodriguez's free exercise of Satanism, Dzurenda is not entitled to summary judgment on Rodriguez's Count I, incorporated Free Exercise claims.

### 2.    Count I - Rodriguez's Equal Protection Claims[4]

Rodriguez's Count I further alleges violations of the Fourteenth Amendment's Equal Protection Clause. (*See* ECF No. 66). Specifically, Rodriguez alleges: (1) Satanists are not recognized by NDOC as a faith group unlike similarly situated individuals of nonmainstream faiths; (*Id.* at 5); (2) Dzurenda denied Rodriguez an equal opportunity to practice his religion by failing to make ritual property items available to him and other Satanists like similarly situated individuals of other faiths (*Id.* at 7); and (3) Dzurenda promoted a policy and practice of discrimination against him because he is a Satanist (*Id.* at 7-8).

"The Equal Protection Clause requires the State to treat all similarly situated people equally." *Shakur*, 514 F.3d at 891 (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). The preliminary inquiry in an equal protection claim is identifying the plaintiff's relevant class, which is "comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified." *Furnace v.*

---

[4]    Rodriguez also alleged an equal protection claim with respect to Count III. However, as noted above, Rodriguez has voluntarily abandoned this claim. (*See* ECF No. 103 at 9).

1    *Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (internal quotation omitted).  Then, "a

2    plaintiff must show that the defendant acted with an intent or purpose to discriminate

3    against him based upon his membership in a protected class."  *Serrano v. Francis*, 345

4    F.3d 1071, 1082 (9th Cir. 2003).  Because the claim requires proof of intentional

5    discrimination, "[m]ere indifference" to the unequal effects of a particular class does not

6    establish discriminatory intent.  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th

7    Cir. 2005).

8        Rodriguez identifies his relevant class as a practitioner of Satanism.  (ECF No. 66

9    at 5).  In support of his contention that his right to equal protection has been violated,

10   Rodriguez produced an affidavit and a NDOC religious property request form noting that

11   inmate Greene, whose "declared religion" was "Judaism", was approved for a "Figaro 18

12   [inch]" chain and a "Star of David chain charm."  (ECF No. 94-1 at 33-37).  To prevail on

13   an equal protection claim, Rodriguez must show first that he is "similarly situated" to

14   Greene, then "that [Dzurenda] acted with an intent or purpose to discriminate against him

15   based upon his membership in a protected class."  *Serrano*, 345 F.3d at 1082.  Rodriguez

16   has made no such showing.

17       Inmate Greene and Rodriguez are not "similarly situated" because Judaism is a

18   traditional religion approved by NDOC while Satanism is a nonmainstream religion that

19   is not currently approved by NDOC.  *See Furnace*, 705 F.3d at 1030; *see also Shakur*,

20   514 F.3d at 891.  Moreover, Dzurenda's evidence shows Rodriguez was approved for

21   multiple pieces of religious property, including a "medallion".  (*See* ECF Nos. 103-2, 103-

22   3, 103-4, and 103-6).  Rodriguez thus cannot show he was prevented from obtaining and

23   using religious property items in contravention of the Fourteenth Amendment.  Indeed,

24   Rodriguez has failed to even show disparate treatment, much less discrimination for the

25   purposes of the Equal Protection Clause.  *See Serrano*, 345 F.3d at 1082.  Accordingly,

26   Rodriguez has offered no evidence showing Dzurenda promoted a policy and practice of

27   discrimination against Satanism or Satanists.

28       The Equal Protection clause "does not mean . . . all prisoners must receive

1    identical treatment and resources." *Hartmann*, 707 F.3d at 1123 (citing *Cruz*, 405 U.S.

2    at 322, n.2). Thus, NDOC is not required to include all conceivable nonmainstream faiths

3    on its list of recognized faiths. Instead, to comply with the Fourteenth Amendment, NDOC

4    must afford Rodriguez "'a reasonable opportunity of pursuing his faith comparable to the

5    opportunity afforded fellow prisoners who adhere to conventional religious precepts.'"

6    *Allen v. Toombs*, 827 F.2d 563, 568 (9th Cir. 1987). Rodriguez entirely fails to show he

7    was denied a reasonable opportunity to pursue Satanism compared to fellow religious

8    inmates.

9        While a reasonable juror could find Rodriguez's DOC 3505 requests were ignored

10   because NDOC did not want to recognize Satanism or its practitioners as legitimately

11   religious, Rodriguez fails to meet the threshold "similarly situated" inquiry. *See Furnace*,

12   705 F.3d at 1030. Moreover, Rodriguez has offered no evidence that would show

13   "[Dzurenda] acted with an intent or purpose to discriminate against him based upon his

14   membership in a protected class", as required to establish an equal protection claim. *See*

15   *Serrano*, 345 F.3d at 1082. Accordingly, Dzurenda is entitled to summary judgment as it

16   relates to Rodriguez's Count I, Fourteenth Amendment Equal Protection claim.

17        **3.    Counts II and III - Rodriguez's RLUIPA Claims**

18       Next, Rodriguez's Counts II and III are based on alleged violations under RLUIPA.

19   (*See* ECF No. 66 at 8-12). RLUIPA provides, in relevant part:

20       No government shall impose a substantial burden on the religious exercise
         of a person residing in or confined to an institution … even if the burden
21       results from a rule of general applicability, unless the government
         demonstrates that imposition of the burden on that person: (1) is in
22       furtherance of a compelling governmental interest; and (2) is the least
         restrictive means of furthering that compelling governmental interest.
23

24   42 U.S.C. § 2000cc-1(a). Thus, RLUIPA mandates a stricter standard of review for prison

25   regulations that burden the free exercise of religion than the reasonableness standard

26   articulated in *Turner*. *Greene v. Solano County Jail*, 513 F.3d 982, 986 (9th Cir. 2008)

27   (citations omitted).

28

1    To establish a RLUIPA violation, Rodriguez must show: (1) he participates in a
2    religious exercise; and (2) the prison regulation substantially burdened that exercise.
3    *Walker*, 789 F.3d at 1134.  The burden then shifts to the state to show its regulation is
4    the least restrictive means of furthering a compelling governmental interest.  *Id.*  The
5    Ninth Circuit has set out four factors for the RLUIPA analysis: (1) what "exercise of
6    religion" is at issue; (2) what "burden," if any, is imposed on that exercise of religion; (3)
7    if there is a burden, whether it is "substantial;" and (4) if there is a "substantial burden,"
8    whether it is justified by a compelling governmental interest and is the least restrictive
9    means of furthering that compelling interest.  *Navajo Nation v. U.S. Forest Serv.*, 479
10    F.3d 1024, 1033 (9th Cir. 2007), *aff'd en banc*, 535 F.3d 1058, 1068 (9th Cir. 2008).

11    Although RLUIPA does not define what constitutes a "substantial burden" on
12    religious exercise, the burden must be more than a mere inconvenience.  *Navajo Nation*,
13    479 F.3d at 1033 (internal quotations and citations omitted).  The Ninth Circuit has stated
14    that a substantial burden is one that is "'oppressive' to a 'significantly great' extent."  "That
15    is, a 'substantial burden' on 'religious exercise' must impose a significantly great
16    restriction or onus upon such exercise."  *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th
17    Cir. 2005) (quoting *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034
18    (9th Cir. 2004)).  The burden must prevent the plaintiff "from engaging in [religious]
19    conduct or having a religious experience."  *See Navajo Nation*, 479 F.3d at 1033 (internal
20    citations omitted).  In addition, a substantial burden exists when the state, "denies [an
21    important benefit] because of conduct mandated by religious belief, thereby putting
22    substantial pressure on an adherent to modify his behavior and to violate his beliefs."
23    *Shakur*, 514 F.3d at 888 (quoting *Thomas v. Review Bd. of the Ind. Employment Sec.*
24    *Div.*, 450 U.S. 707, 717-18 (1981) (internal quotations omitted)).

25    Here, Rodriguez argues AR 810 substantially burdens his religious exercise
26    because AR 810.3 does not facially recognize Satanism as a faith group.  (*See* ECF No.
27    66).  As noted above, it is not disputed that Rodriguez's practice of Satanism is a religious
28    exercise.  *Walker*, 789 F.3d at 1134.  Thus, the only remaining question is whether AR

810.3 substantially burdened that exercise.  *Id.*  While Rodriguez does show that his religious exercise is arguably burdened in some way by NDOC regulations, he has failed to show AR 810.3 places a "substantial burden" on the free exercise of Satanism.  For example, Rodriguez may show a substantial burden was imposed by providing evidence his religious exercise "was so burdened as to pressure [him] to abandon [his] beliefs" (*Hartmann*, 707 F.3d at 1125 (citing *Warsoldier*, 418 F.3d at 996 and *Shakur*, 514 F.3d at 882, 891)) or by showing he was forced to "choose between following the precepts of [his] religion and forfeiting benefits."  *Warsoldier*, 418 F.3d at 996 (quoting *Sherbert v. Verner*, 374 U.S. 398 (1963)).

Rodriguez has presented no evidence AR 810.3 pressured him or other Satanists to abandon their beliefs or that AR 810.3 created some other substantial burden on their religious exercise.  Indeed, Rodriguez has failed to show the burdens allegedly placed on him by AR 810.3 are not the same incidental burdens experienced by all inmates as an inherent consequence of their incarceration.  *See San Jose Christian*, 360 F.3d at 1035 (where an alleged burden is an inherent part of a process, such a burden cannot "amount to a substantial burden on religious exercise").  That NDOC inmates of all faiths are subjected to AR 810.3 further militates against the finding of a substantial burden.  *Id.* Thus, Rodriguez fails to shift his burden to Dzurenda to show AR 810.3 is the least restrictive means of furthering a compelling governmental interest.  *See Walker*, 789 F.3d at 1134.  Accordingly, Dzurenda is entitled to summary judgment on Rodriguez's Count II and III, RLUIPA claims.

### 4.    Count III – Establishment Clause Claims

As noted above, Rodriguez's Count III alleges ARs 810, 810.1, and 810.3 violate the Establishment Clause (ECF No. 66 at 9-12).  Although Dzurenda argues AR 810 does not create constitutional rights for Rodriguez (ECF No. 99 at 6-7), Rodriguez brings his claims under the First Amendment to the Constitution of the United States.  (*See* ECF No. 66).  However, as noted in *Turner*: "when a prison regulation imposes on an inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate

penological interests." 482 U.S. at 89.  Having applied the Turner factors to AR 810 above, the court finds AR 810 is "reasonably related to legitimate penological interests."  *Id.*

Further, while Rodriguez alleges ARs 810, 810.1 and 810.3 are facially discriminatory, nothing on the face of those regulations is discriminatory.  (S*ee* ECF No. 66 at 17-79).  Instead, though unartfully plead, Rodriguez's challenge is to the alleged discriminatory *effect* of AR 810 because the process outlined in AR 810.1 has not yet resulted in Satanism being added to the list of faith groups at AR 810.3.  (*See* ECF No. 66 at 9-12, 55-72).  NDOC cannot be expected to maintain a list of all possible non-traditional and non-mainstream religions in AR 810.3.  Instead, AR 810.1 outlines processes which allow Rodriguez's accommodation requests to be acknowledged and considered, as shown by Dzurenda's evidence.  (*See* ECF Nos. 103-1, and 111).  Despite Rodriguez's contentions, his evidence also shows AR 810 is a vehicle for Satanism to be included, not excluded, from AR 810.3.  (S*ee* ECF No. 66 at 17-79).  Accordingly, Rodriguez's challenges to ARs 810, 810.1, and 810.3 fail.  Dzurenda is thus entitled to summary judgment on Rodriguez's Count III, Establishment Clause claims.

## IV.   CONCLUSION

For good cause appearing and for the reasons stated above, the court recommends Rodriguez's partial motion for summary judgment (ECF No. 94) be denied in its entirety and Defendants' motion for summary judgment (ECF No. 103) be granted in part and denied in part.  Specifically, the court recommends Dzurenda's motion for summary judgment regarding Rodriguez's Count I, Free Exercise claims regarding ARs 810, 810.1, and 810.3, Rodriguez's Counts I and III, Equal Protection claims, Rodriguez's Count II and III RLUIPA claims, and Rodriguez's Count III, Establishment Clause claims be granted.  However, the court recommends Dzurenda's motion for summary judgment (ECF No. 103) regarding Rodriguez's Count I, incorporated Free Exercise claims regarding other alleged burdens on Rodriguez's practice of Satanism, be denied.

The parties are advised:

1.      Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of

Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.      RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Rodriguez's partial motion for summary judgment (ECF No. 94) be **DENIED**; and

**IT IS FURTHER RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 103) be **GRANTED** in part and **DENIED** in part as follows:

1.      Dzurenda's motion for summary judgment regarding Rodriguez's Count I, Free Exercise claims regarding ARs 810, 810.1, and 810.3, Rodriguez's Counts I and III, Equal Protection claims, Rodriguez's Count II and III RLUIPA claims, and Rodriguez's Count III, Establishment Clause claims be **GRANTED**.

2.      Dzurenda's motion for summary judgment regarding Rodriguez's Count I, incorporated Free Exercise claims regarding other alleged burdens on Rodriguez's practice of Satanism, be **DENIED**.

**DATED**: ___September 17, 2020___

_____
**UNITED STATES MAGISTRATE JUDGE**